**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>UNITED STATES MAGISTRATE JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>ROOM 2060<br>NEWARK, NJ 07101<br>973-297-4903 |

July 17, 2006

**REPORT AND RECOMMENDATION**

**Re:**   **Shernoff v. Hewlett-Packard Company**
         **Civil Action No.  04-4390 (JAP)**

Dear Parties:

     Presently before the Court is the Motion by defendant, Hewlett-Packard Company ("HP"), to enforce the "non-economic" terms of a settlement reached between it and plaintiff, Mia Shernoff ("plaintiff").  Plaintiff has cross-moved to rescind the settlement and to restore the case to active docket for discovery and trial.  The Court has considered the moving, opposition, and reply papers submitted by the parties, as well as supplemental certifications and briefs.  On July 27, 2005, the Court conducted an evidentiary hearing wherein the parties were permitted to present and cross-examine witnesses. (Docket Entry #29).  For the reasons stated below, this Court recommends that the motion to rescind the settlement be denied, and the motion to enforce the settlement as to the non-economic terms be granted.

**A.**   **Background**

    1.   Plaintiff's Employment

     This case stems from plaintiff's employment with Compaq Computer Corporation

("Compaq") which was later merged with defendant HP. On April 4, 2005, plaintiff filed this action for breach of contract, negligence and breach of the implied covenant of good faith and fair dealing.

As a corporate officer of Compaq, plaintiff received stock options as part of her compensation package; specifically, she received the option to purchase 25,000 shares of Compaq stock at a certain exercise price. Plaintiff claims that Compaq made two errors in its Initial Grant of the shares. First, the grant date was incorrectly stated as January 31, 2001 instead of January 31, 2002. Second, the exercise price was incorrectly computed to be $23.71 per share instead of the correct figure of $12.35 per share. Plaintiff made Compaq aware of the errors and Compaq corrected its mistakes in a Revised Grant.

When Compaq merged into HP, plaintiff contends that the Merger Agreement obligated HP to convert the Compaq options into options to purchase shares of HP stock, but to leave all of the other terms of the options contract unchanged. Plaintiff alleges that in converting her shares of stock, HP erroneously used the stock price from the Initial Grant (i.e., $23.71) instead of the Revised Grant price ($12.35). Thus, when plaintiff's 25,000 shares of Compaq stock were ultimately converted to 15,812.50 shares of HP stock, the exercise price was inaccurately computed to be $37.49 per share as opposed to the correct price of $19.53. In January 2003, HP communicated the $37.49 price to plaintiff, and plaintiff claims she was unaware of the mistake. At some point later in time, however, plaintiff detected the error in the pricing and, in early March 2004, plaintiff requested that HP honor the option contract at the correct price. On or about March 11, 2004, HP contends that it corrected the error to reflect the correct option price of $19.53.

Plaintiff then demanded that HP arrange for a cashless purchase and sale of her options retroactive to January 26, 2004. This date is significant. On January 26, 2004, HP stock closed at

2

$26.28, which was the highest price the stock had traded during the previous 260 trading days since the time plaintiff first received her options in January 2003. Plaintiff asserts that HP's error caused her to refrain from exercising her stock options at a time when the share price of HP stock was at a high. Therefore, she claims damages amounting to $106,740.38.[1]

2.  The Settlement Conference

On April 21, 2005, this Court conducted a settlement conference. Counsel for both parties appeared. Plaintiff was represented by local counsel, Anna M. Stathis, Esq., and by her husband, Frank L. Shernoff, Esq., admitted *pro hac vice*. The parties were available by telephone.

The Court engaged in lengthy settlement discussions with both parties. At the culmination of the conference, plaintiff, by and through her husband and counsel, agreed to surrender her options to purchase HP stock in return for a payment of $37,500. In addition, the parties orally agreed to the following non-economic terms: (1) non-admission of liability on the part of HP; (2) a general release of all claims from plaintiff; (3) a confidentiality agreement regarding the terms of the settlement; (4) a mutual non-disparagement provision; and (5) no future re-employment unless waived at defendant's option. The District Court entered a 60-day Order on April 25, 2005.

Over the course of the next few weeks, HP and plaintiff attempted to embody the terms of the agreement in a formal written document. On May 10, 2005, HP forwarded plaintiff a draft which plaintiff refused to sign. Instead, plaintiff sent a new version of the agreement to defendant on May 16, 2005. On June 1, 2005, defendant responded to plaintiff's changes accepting some and rejecting others. Then, at some time between June 1, 2005 and June 14, 2005, without notice to HP or the

---

[1] Plaintiff's calculation of damages assumes that she would have exercised her option on the exact date that HP's stock reached its highest price over a 260-day time period.

Court, plaintiff unilaterally decided to exercise her HP stock options rather than surrender them to HP pursuant to the settlement. She received a net amount of $28,595.69.

By letter dated June 21, 2005, counsel for HP alerted the Court of plaintiff's breach of the settlement and requested a hearing. In reply, plaintiff moved to rescind the Settlement Agreement. On July 18, 2005, HP opposed the plaintiff's motion and indicated that it would permit plaintiff to retain the proceeds of the option exercise, but sought to enforce the agreed-upon non-economic terms.

The Court heard testimony under oath on July 27, 2005. For the reasons set forth below, this Court finds that the parties entered into a binding Settlement Agreement on April 21, 2005 and recommends that defendant's motion to enforce the Settlement Agreement be granted and plaintiff's cross-motion be denied.

**B.      Legal Discussion**

State law governs the enforcement of settlement agreements in federal court. See, e.g., Moss v. McDonald's Corp., No. 03-5000, 2006 WL 680985 at *4 (D.N.J. 2006); Excelsior Ins. Co. v. Pennsbury Pain Center, 975 F. Supp. 342, 349 (D.N.J. 1996). A settlement agreement between parties is a contract and, like all contracts, may be freely entered into absent fraud or other compelling circumstances. See Zuccarelli v. Dep't of Envir. Prot., 741 A.2d 599, 604 (N.J. Super. Ct. App. Div. 1999) (citing Pascarella v. Bruck, 462 A.2d 186, 190 (N.J. Super. Ct. App. Div. 1983)).

Traditional contract law principles provide that "a contract arises from the manifest intentions of the parties to engage in an offer and acceptance of sufficiently definite essential terms." See, e.g., Excelsior Ins. Co., 975 F. Supp. at 349; see also United States v. Lightman, 988 F. Supp. 448, 458

(D.N.J. 1997) ("That contract is enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms."); Hagrish v. Olson, 603 A.2d 108, 109 (N.J. Super. Ct. App. Div. 1992) ("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party."). An oral agreement as to the essential terms of a settlement is valid even though the parties later intend to reduce their agreement to a formal writing. See Pascarella v. Bruck, 462 A.2d 186, 191 (N.J. Super. Ct. App. Div.1983); Bistricer v. Bistricer, 555 A.2d 45, 47-48 (N.J. Super. Ct. Ch. Div. 1987). As long as the "basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intention to be bound." Hagrish, 603 A.2d at 110; see also Lightman, 988 F. Supp. at 458 ("A contract is formed where there is an offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty").

In New Jersey, there is a strong public policy in favor of settlement. See, e.g., Borough of Haledon v. Borough of North Haledon, 817 A.2d 965 (N.J. Super. Ct. App. Div. 2003); Zuccarelli, 741 A.2d at 604. Considering New Jersey public policy, courts should "strain" to uphold settlements. See Bistricer, 555 A.2d at 49. Accordingly, as indicated above, courts will not interfere with a settlement agreement "absent a demonstration of fraud or other compelling circumstances." Zuccarelli, 741 A.2d at 604 (quoting Pascarella v. Bruck, 462 A. 2d 186, 190 (N.J. Super. Ct. App. Div. 1983 )).

This Court is satisfied that a voluntary binding contract was formed between the parties, despite the fact that they have not executed the Settlement Agreement. Plaintiff, through her attorneys, and defendant agreed to the material terms of the settlement: that plaintiff would forego her claims against defendant in exchange for $37,500, and the option held by plaintiff would be

surrendered to HP.  In addition, the agreed-to "non-economic" terms of the Agreement included the mutual non-disparagement provision, confidentiality provision, and that plaintiff was precluded from accepting employment by HP except by "mutual consent of the parties."

Both the testimony of Ms. Shernoff and her counsel is consistent with a meeting of the minds on these core terms.  Although plaintiff did not personally attend the conference, she gave her attorney, Mr. Shernoff, instructions "to do what was best." Tr. 19:3-20:10.  Following the April 21, 2005 conference, Mr. Shernoff advised plaintiff that he had entered into a settlement agreement and had agreed to certain terms on her behalf. Tr. 13:15-18.  Specifically, plaintiff understood that she would have to sign a written settlement agreement containing certain provision as a condition of receiving a monetary payment from HP.  She further understood that the Settlement Agreement would contain certain terms including a release; a non-disparagement provision; a confidentiality provision; and a no re-employment provision subject to waiver by HP. Tr. 25:10-26:1.

Ms. Stathis, plaintiff's local counsel, understood that the terms agreed upon included the following: (1) a payment by HP; (2) plaintiff would forfeit her stock options; (3) a mutual non-disparagement provision; (4) a confidentiality provision; and (5) that plaintiff was precluded from accepting any employment from HP, except by "mutual consent of the parties." Tr. 36:16-37:13; 42:10.

At the April 21, 2005 conference, the parties agreed that the no re-employment clause could be waived only by mutual consent of the parties. Neither Ms. Stathis nor Mr. Shernoff specified that they intended the no re-employment provision to be waivable simply by reaching an agreement with her colleagues at HP. Tr. 42:2-10.

Based on the foregoing law, plaintiff's assent to the essential terms of the Settlement

Agreement is binding. Her subsequent disagreement with certain collateral terms in the proposed written Settlement Agreement does not warrant a finding that the settlement agreed upon by the parties on April 21, 2005 is unenforceable. See Hagrish, 603 A.2d at 109-110 (upholding agreement to settle case where parties reached settlement agreement on essential terms, despite parties' later disagreement on collateral issue); See Pascarella, 462 A.2d at 191 (upholding oral agreement to settle case for $25,000.00 although parties had subsequent disagreement about certain terms contained in written agreement); Bistricer, 555 A.2d at 48-49 (same).

In sum, "the bargain was clearly struck." Pascarella, 462 A.2d at 191. Plaintiff brought this lawsuit prompted by her inability to exercise her stock options at a time when the share price of the HP stock was at a high. Only after the parties entered an oral settlement agreement did plaintiff have a change of heart and decide unilaterally to exercise the very stock options which precipitated the federal suit. Plaintiff's "second thoughts" cannot render an otherwise enforcement agreement invalid. To hold otherwise would be contrary to the public policy of New Jersey and flood the courts with indecisive plaintiffs. Id. ("If later reflection were the test of the validity of such an agreement, few contracts of settlement would stand."); Bistricer, 555 A.2d at 49 (noting the concern that allowing settlement agreements to be rescinded based on "second thoughts" would increase the "growing backlog of our New Jersey courts.").

For the same reasons, the Court denies plaintiff's cross-motion to rescind and to restore the case to the active docket. In support of her cross-motion, plaintiff relies upon several legal theories including, but not limited to, equitable fraud, misrepresentation, and unilateral mistake, to support her position that a binding settlement agreement was not reached by the parties on April 21, 2005. However, because the weight of the evidence supports a finding that a binding settlement was

7

reached, and there is no credible evidence to support a finding of fraud or mistake, plaintiff's cross-motion is denied.

Accordingly, this Court recommends that HP's motion to enforce the Settlement Agreement be granted and plaintiff's cross-motion to rescind the settlement and restore this case to the active docket for discovery and trial be denied.[2] This Court also recommends denial of defendant's request for attorneys' fees incurred in connection with the instant motion. Generally, "the prevailing litigation is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). Here, while a court, exercising its inherent powers, may award attorneys fees where "the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons," the record does not support such a finding here. Walther & Cie v. U.S. Fidelity & Guaranty Company, 397 F. Supp. 937, 946 (M.D. Pa. 1975).

---

[2] In her post-hearing brief, plaintiff seeks, for the first time, the recusal of the undersigned, pursuant to 28 U.S.C. § 455(b)(1). Plaintiff claims that the Court has personal knowledge of disputed facts relevant to the terms of the settlement. Section 455, provides, in relevant part, that a judge should recuse himself if he or she has personal knowledge of disputed evidentiary facts concerning the proceeding. See 28 U.S.C. § 455(b)(1). The relevant inquiry is "whether a reasonable person knowing all the circumstances would harbor doubts concerning the judge's impartiality." Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 167 (3d Cir. 2004). The decision of whether to recuse lies within the discretion of the trial judge. United States v. Wilensky, 757 F.2d 594, 599-600 (3d Cir. 1985).

Plaintiff offers no legal authority to support her position that recusal is warranted. Plaintiff also does not point to any extrajudicial source of bias. Indeed, the Court's role as mediator at the April 21, 2005 settlement conference in itself does not warrant recusal. Notwithstanding plaintiff's contentions to the contrary, "what a judge learns through proceedings in the case from which recual is sought does not give rise to bias. . . ." Johnson v. Trueblood, 629 F.2d 287, 290-91 (3d Cir. 1980), cert. denied, 450 U.S. 999 (1981). In any event, this Court's findings herein were based exclusively on the testimony of the witnesses, not on the court's personal recollection of events. Accordingly, plaintiff's informal request for recusal is denied.

Attached hereto as Exhibit A is the proposed Settlement Agreement, which this Court find reflects the terms agreed upon by the parties at the settlement conference on April 21, 2005. The Settlement Agreement and Release are incorporated herein by reference and their terms are binding on the parties.

## Conclusion

It is recommended that defendant's motion to enforce the Settlement Agreement be granted and plaintiff's cross-motion to rescind be denied. The parties have ten days from the date hereof to file objections.

**SO ORDERED.**

*s/Madeline Cox Arleo*
MADELINE COX ARLEO
United States Magistrate Judge

cc:  Clerk
     Hon. Joel A. Pisano, U.S.D.J.
     All Parties
     File